**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

DENIS MANDU,

        Plaintiff,

    v.

CSC HOLDINGS, LLC a/k/a ALTICE,

        Defendant.

NO.: 3:24-cv-00542-SFR-RMS

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTION TO COMPEL DISCOVERY AND FOR
FEES AND COSTS PURSUANT TO FED. R. CIV. P. 37(A)(5)(A)**

<u>On the Brief:</u>
Randi L. Halbert, Esq.
Joseph M. Vento, Esq. (admitted *pro hac vice*)

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500
*Attorneys for Defendant*

326654624v.1

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................................... 1

II.   ARGUMENT............................................................................................................... 2

    A.   Plaintiff's Discovery Responses Remain Deficient................................................ 2

        1.   Post-Termination Earnings: Tax Returns Alone are Insufficient ............... 2

        2.   Post-Termination Earnings: Plaintiff's Mortgage Documents Are Discoverable Considering Plaintiff's Questionable Reported Earnings ....................................................................................................... 4

    B.   Fees and Costs are Mandatory Under FRCP 37(a)(5)(A), and Plaintiff Has Failed to Establish Any Exception........................................................................... 6

    C.   Plaintiff's Counsel's Use of Inadvertently Disclosed Privileged Communications in a Court Filing is Improper and Warrants Separate Relief........................................................................................................................ 7

III.  CONCLUSION............................................................................................................ 9

326654624v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Broadnax v. City of New Haven*,
    415 F.3d 265 (2d Cir. 2005)...................................................................................................3

*Cardwell v. Davis, Polk & Wardwell, LLP*,
    No. 1:19-cv-10256 (GHW), 2021 WL 2650371 (S.D.N.Y. June 28, 2021)..............................6

*Juice Creative Grp., LLC v. UncommonGood, Inc.*,
    No. 3:22-CV-01175, 2023 WL 8368232 (D. Conn. Dec. 3, 2023) ..........................................6

**Other Authorities**

Connecticut Rule of Professional Conduct 4.4(b) ..............................................................................8

Fed. R. Evid. 502(b)...........................................................................................................................9

Fed. R. Civ. P. 26..............................................................................................................................1

Fed. R. Civ. P. 26(b)(1).....................................................................................................................3

Fed. R. Civ. P. 26(b)(5)(B) ........................................................................................................1, 8, 9

Fed. R. Civ. P. 37..............................................................................................................................1

Fed. R. Civ. P. 37(a)(5)(A) ........................................................................................................1, 6, 7, 10

326654624v.1

Pursuant to Rules 37 of the Federal Rules of Civil Procedure ("FRCP") and Rule 26 of this Court's Local Rules, Defendant CSC Holdings, LLC ("Defendant") submits this Reply Memorandum of Law in Further Support of its Motion to Compel Discovery, requesting an Order directing Plaintiff Denis Mandu ("Plaintiff") to provide full and fair responses to Defendant's discovery requests, and to award to Defendant attorneys' fees and costs incurred in bringing this motion.

## I.      PRELIMINARY STATEMENT

Plaintiff's opposition fails to provide a single reason why Defendant should not be awarded its reasonable attorneys' fees and costs associated with the instant motion pursuant to FRCP 37(a)(5)(A).  From the outset of this case, Plaintiff has played fast and loose with his discovery obligations – ignoring the Court's Initial Discovery Protocols for Employment Cases Alleging Adverse Action (the "Protocols"), stonewalling Defendant's formal discovery requests with boilerplate objections, and producing only the bare minimum when forced to do so by motion practice.  Sanctions are warranted.

Worse still, Plaintiff's opposition compounds counsel's misconduct by referencing and paraphrasing the substance of an attorney-client privileged communication that was inadvertently disclosed and for which Defendant promptly invoked the protections of FRCP 26(b)(5)(B). Despite being placed on notice of the privilege and instructed to destroy the communication, Plaintiff's counsel chose to weaponize it in a court filing.  This conduct warrants separate relief.

1

326654624v.1

## II.    <u>ARGUMENT</u>

### A.    <u>Plaintiff's Discovery Responses Remain Deficient</u>

#### 1.    *Post-Termination Earnings: Tax Returns Alone are Insufficient*

Plaintiff does not dispute that he failed to produce any records related to his post-termination earnings as required by the Protocols[1] within thirty days of Defendant's Answer (filed on May 16, 2025).  Nor does Plaintiff dispute that he maintained boilerplate objections to Defendant's formal discovery requests seeking this information; information that is clearly discoverable.  Plaintiff's haphazard approach to discovery should not be countenanced.[2]

Plaintiff now argues that his production of personal and business tax returns from 2021 through 2024 constitutes full compliance with his discovery obligations.  It does not.  To be clear, Plaintiff produced his personal and business tax returns for the years 2021-2023 the night before his June 9 deposition and, for the year 2024, the day after his deposition.  (*See* Declaration of Joseph M. Vento, Esq. ("Vento Decl."), ¶ 7.)

After Plaintiff's employment was terminated, he returned to running his own business, a single-member LLC organized as a sole proprietorship referred to as "Prime Automotive, LLC." (Plf. Dep., attached to the Vento Decl. as Ex. D, 17:19-18:25, 38:1-4.) Tax returns for a single-member LLC organized as a sole proprietorship reflect only the net income reported to the IRS—a figure that is a product of accounting choices, deductions, and timing decisions entirely within Plaintiff's control.  In other words, the business' tax return shows what Plaintiff chose to report. A general ledger, business records, and bank account statements tell what Plaintiff actually earned.

---

[1] *See* https://www.ctd.uscourts.gov/sites/default/files/Discovery_Protocols.pdf.
[2] Notably, Plaintiff served a "Certification" of his prior discovery responses on June 10 that claims his discovery responses are "true and accurate to the best of his knowledge" despite having testified to at least one considerable error in his response to Interrogatory No. 10.  (Vento Decl., ¶¶ 8-10.)

This is exactly what Defendant requested during and after Plaintiff's deposition. (Vento Decl., Ex. A.)

This distinction is not academic. Plaintiff bears the burden of demonstrating that he reasonably mitigated his damages following his termination in February 2022. *See Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005). Where, as here, Plaintiff returned to operating his own business, Defendant is entitled to scrutinize the actual financial performance of that business – not merely the summary figures Plaintiff elected to report on his federal tax returns – in order to mount a meaningful mitigation defense. The documents Defendant seeks are the only reliable means of doing so. Plaintiff's opposition does not argue why his tax returns alone are sufficient, or otherwise assert any objection to Defendant's request for additional financial records related to Prime Automotive. Where a plaintiff returns to self-employment following termination, tax returns do not permit Defendant to test the accuracy of those figures or to assess the actual financial performance of the business. The underlying records – general ledgers, bank statements, invoices, and books of account – are the only reliable means of doing so, and they are squarely within the scope of FRCP 26(b)(1).

Accordingly, the following categories of documents remain outstanding and their disclosure should be compelled:

1. A copy of bank statements for Prime Automotive Sales and Service, LLC a/k/a Prime Automotive, LLC ("Prime Automotive") from January 1, 2021 through present date (see RFP Nos. 1, 8, 9).

2. A copy of Mr. Mandu's personal bank statements (only for banks he used to accept wages/distributions from Prime Automotive) from January 1, 2021 through present date (see RFP Nos. 1, 8, 9).

3. To the extent different from above, Mr. Mandu's bank statements for the checking account ending in 8326 for the time period of November 1, 2021 through February 28, 2022 (see RFP Nos. 1, 8, 9).

326654624v.1

4.    The general ledger, profit and loss statements and balance sheets for Prime Automotive Sales and Service, LLC a/k/a Prime Automotive, LLC from January 1, 2021 through present date (see RFP Nos. 1, 8, 9).

(Vento Decl., Ex. A.)

### 2.    *Post-Termination Earnings: Plaintiff's Mortgage Documents Are Discoverable Considering Plaintiff's Questionable Reported Earnings*

Following Plaintiff's deposition and production of his tax returns, Defendant also requested that Plaintiff produce "mortgage statements for his current address and his rental property at 660 Grand Street" along with "[a]ll documents supplied to PennyMac to obtain mortgages on both Mr. Mandu's current property and his rental property at 660 Grand Street."  (Vento Decl., Ex. A.)  This is because Plaintiff's reported earnings on his tax returns are questionable at best.

Plaintiff reported personal and business income of less than $50,000 in each tax year 2021-2024. (Vento Decl., Exs. F-I.)  Specifically:

| Year | Personal Income | Business Income (Form 1040, Line 3) |
|------|-----------------|-------------------------------------|
| 2021 | $7,199 (W2) $28,929 (total income, line 9) | $9,390 |
| 2022 | $5,091 (W2) $39,867 (total income, line 9) | $42,711 |
| 2023 | $19,358 (W2) $38,583 (total income, line 9) | $24,945 |
| 2024 | $0 (W2) $19,922 (total income, line 9) | $25,072 |

*Id.*

Yet, despite this income level, Plaintiff purchased a new house in 2024, secured by a mortgage, for which public records show he paid $630,000.[3]  (Plf. Dep. at 4:13, 47:5-49:3.)  To boot, Plaintiff's mortgage does not appear to have been contingent upon a primary residence sale,

---

[3] https://www.zillow.com/homedetails/196-Broadway-Trumbull-CT-06611/57400747_zpid/ (last accessed Jue 17, 2026).

326654624v.1

because he retained his prior residence and currently rents it out as a rental property.  (*Id.*) Plaintiff's ability to secure such a mortgage with the above income level reported to the IRS raises suspicions as to his true level of income.  These questions are further compounded by the various issues other issues raised by Plaintiffs tax returns.

First, Plaintiff reported W2 income in 2023 despite testifying that Prime Automotive was his only source of income since he left Defendant's employ, he never paid himself a salary from Prime Automotive, and his wife (he filed "Married Filing Jointly" in 2023) does not work.  (Plf. Dep. at 14:4-10, 20:17-19, 38:1-7.)

Second, Plaintiff twice filed his taxes as the "Head of Household" – for tax years 2021 and 2022 – despite having been married in 2020.  In ***both*** 2021 and 2022, he amended his tax filings to "Married Filed Jointly."  Plaintiff had no explanation at deposition for how or why he made this purported mistake twice, and then testified he could not remember when he married after first testifying he was married in 2020. (Plf. Dep. at 13:2-14:3, 136:15-139:21.)

Third, Plaintiff testified his accountant mistakenly claimed near $21,250 in expenses on his original 2022 tax return, which expenses were removed from his amended filing that year, and could not explain how or why that mistake was made. (*Id.* at 140:21-144:7.)

Fourth, Plaintiff's 2021 tax returns show he claimed to have received $7,461 in unemployment compensation, even though Plaintiff testified he only worked for Defendant in 2021 and did not apply for unemployment benefits that year (*Id.* at 30:15-31:1, 145:10-148:23.) These irregularities raise legitimate concerns with Plaintiff's tax returns.  As such, Defendant requested all documents provided to Plaintiff's lender, PennyMac, to obtain such mortgage (Vento Decl., Ex. A.)  These documents will expectedly show that Plaintiff's true yearly income is higher than reported in his tax returns.

**B.**     **Fees and Costs are Mandatory Under FRCP 37(a)(5)(A), and Plaintiff Has Failed to Establish Any Exception**

The analysis here is identical to that in the companion *Rivera* matter, pending before this Court (3:24-cv-00541-SFR-RMS).    As stated in Defendant's moving papers, "[m]onetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled." *Juice Creative Grp., LLC v. UncommonGood, Inc.*, No. 3:22-CV-01175 (JCH), 2023 WL 8368232, at *1 (D. Conn. Dec. 3, 2023) (quoting *Cardwell v. Davis, Polk & Wardwell, LLP*, No. 1:19-cv-10256 (GHW), 2021 WL 2650371, at *2 (S.D.N.Y. June 28, 2021)) (internal citation omitted)).  However, a court must not order sanctions if either: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.  Fed. R. Civ. P. 37(a)(5)(A).  Ultimately, the "burden of persuasion as to whether an exception to mandatory expenses applies is on the party opposing the motion." *Cardwell*, 2021 WL 2650371, at *2.  Here, Plaintiff has failed to demonstrate how any of these exceptions apply.

As to the first prong, before filing this motion, Defendant's counsel sent two letters, seven emails, and conducted two telephone conferences with Plaintiff's counsel in an effort to obtain the most elementary discovery in a single-plaintiff employment discrimination case.  (*See* Halbert Decl. ¶ 7.)[4]  Defendant did not rush to the courthouse seeking judicial intervention.  Indeed, Plaintiff's counsel simply refused to engage meaningfully in the discovery process until judicial intervention became unavoidable.  Plaintiff does not – and cannot – argue otherwise.

---

[4] "Halbert Decl." refers to the previously-filed Declaration of Randi L. Halbert, Esq. in Support of Motion to Compel Discovery and for Fees and Costs Pursuant to Fed. R. Civ. P. 37(a)(5)(A). (ECF No. 81.)

6

As to the second prong, Plaintiff's nondisclosure is indefensible.  The Protocols imposed an affirmative, self-executing obligation on Plaintiff to produce documents relating to his post-termination earnings within thirty days of Defendant's Answer, which was filed on May 16, 2025. Specifically, the Protocols required Plaintiff to produce:

> h. Documents concerning: (i) communications with potential employers; (ii) job search efforts; and (iii) offer(s) of employment, job description(s), *and income and benefits of subsequent employment*.[5]

No discovery request was needed.  No reminder was needed.  The obligation was automatic, and Plaintiff ignored it.  Then, when Defendant served formal discovery requests to ensure compliance on December 23, 2025 (Halbert Decl., Exs. A-B), Plaintiff responded with boilerplate objections that he then maintained even after Defendant notified him in writing such objections were improper.  (Halbert Decl., ¶¶ 5-11.)  There is nothing in Plaintiff's opposition whatsoever that constitutes a substantial justification for any of this.

Lastly, Plaintiff's opposition does not argue that a fee award would be unjust and, accordingly, this exception is conceded.  The instant motion was necessitated entirely by Plaintiff's own conduct. Defendant should not be required to absorb the cost of forcing compliance with obligations that were never in dispute.  Accordingly, Defendant should be awarded its reasonable attorneys' fees and costs incurred in bringing the instant motion.

## C.    Plaintiff's Counsel's Use of Inadvertently Disclosed Privileged Communications in a Court Filing is Improper and Warrants Separate Relief

Defense counsel inadvertently transmitted to Plaintiff's counsel an email containing attorney-client privileged communications. (Vento Decl., ¶¶ 2-4.). Upon discovering the error, Defense counsel promptly notified Plaintiff's counsel of the inadvertent disclosure, invoked the

---

[5] *See* https://www.ctd.uscourts.gov/sites/default/files/Discovery_Protocols.pdf at 3 (emphasis added).

7

protections of FRCP 26(b)(5)(B), and specifically directed Plaintiff's counsel to destroy the communication and refrain from using it or its contents in any proceeding. (Vento Decl., Ex. A.) Plaintiff's counsel did not comply.  Instead, Plaintiff's filed opposition references and paraphrases the substance of that privileged communication. (Opp. Br. at 4-6.) (referencing "Defendant's counsel's own statement concerning the propriety of requesting such documents").

FRCP 26(b)(5)(B) is unambiguous: upon receiving notice that a communication was inadvertently produced and is subject to a claim of privilege, the receiving party "must promptly return, sequester, or destroy the specified information and any copies it has" and "must not use or disclose the information until the claim is resolved." Fed. R. Civ. P. 26(b)(5)(B) (emphasis added). The rule does not create an exception for paraphrasing the substance of the privileged communication rather than quoting it verbatim.  The prohibition applies to the use of the privileged information, in any form.  The notion that counsel may avoid FRCP 26(b)(5)(B)'s prohibition simply by declining to quote the communication word-for-word while nonetheless deploying its substance in a court filing to advance his client's position is, respectfully, not a serious legal argument.  Paraphrasing a privileged communication is using it.  Full stop.

Moreover, the Rules of Professional Conduct reinforce this conclusion. Connecticut Rule of Professional Conduct 4.4(b) requires a lawyer who receives a document relating to the representation of the lawyer's client under circumstances suggesting inadvertent transmission to promptly notify the sender.  *See* Conn. Rules of Prof'l Conduct  R. 4.4(b).  Whatever Plaintiff's counsel believes the inadvertently disclosed email to contain, the communication remains attorney-client privileged.  Defendant has not waived that privilege by virtue of an inadvertent disclosure. *See* Fed. R. Evid. 502(b) (inadvertent disclosure does not constitute waiver where the holder took reasonable steps to prevent disclosure and promptly took reasonable steps to rectify

8

the error).  The Court should disregard entirely any portion of Plaintiff's opposition that references, paraphrases, or relies upon the substance of that communication.  Further, in light of the foregoing, Defendant respectfully requests that the Court:

a.  Strike all portions of Plaintiff's opposition referencing, paraphrasing, or relying upon the substance of the inadvertently disclosed privileged communication;

b.  Order Plaintiff's counsel to immediately destroy all copies of the privileged communication in his possession, custody, or control, in any form, including any notes, summaries, or paraphrases derived therefrom, and to certify such destruction in writing to Defendant's counsel and to the Court within three (3) calendar days of the Court's order;

c.  Award Defendant its reasonable attorneys' fees and costs incurred in connection with bringing this portion of the motion, including the preparation of this Reply, as a sanction for Plaintiff's counsel's violation of FRCP 26(b)(5)(B); and

d.  Grant such other and further relief as the Court deems just and proper.

### III.  CONCLUSION

Plaintiff's opposition does not provide a single cognizable justification for his failure to comply with his most basic discovery obligations. Plaintiff ignored the Court's Protocols, stonewalled Defendant's formal discovery requests with boilerplate objections, produced only a fraction of the discovery owed – and only after being forced to do so by motion practice – and then compounded all of this by filing an opposition that weaponizes a privileged communication Plaintiff's counsel was expressly instructed to destroy.  This conduct should be sanctioned with fees and costs pursuant to FRCP 37(a)(5)(A).

9

Dated: June 22, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By:*/s/ Randi L. Halbert*
Randi L. Halbert (CT 20601)
Cameron A. Smith (CT 31721)
Joseph M. Vento (admitted *pro hac vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
Tel: (212) 218-5500
Fax: (212) 218-5256

*Attorneys for Defendant,*
*CSC Holdings, LLC*

10

326654624v.1

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2026, a true and correct copy of the foregoing Defendant's Reply Memorandum of Law in Support of Motion to Compel and for Fees and costs pursuant to fed. R. Civ. P. 37(a)(5)(a), was filed with the Clerk using the CM/ECF filing system, which send notice of filing to all counsel of record.

/s/ Randi L. Halbert

Randi L. Halbert
*Attorney for Defendant*
*CSC Holdings, LLC*

7

326599463v.1